RECEIVED

JUN - 4 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

APACHE CORP.                                    CIVIL ACTION NO. 06-1643

VERSUS                                          JUDGE DOHERTY

GLOBAL SANTAFE DRILLING CO., ET AL.             MAGISTRATE JUDGE HANNA

## MEMORANDUM RULING

Pending before this Court is the Report and Recommendation issued by the magistrate judge

on the Motion to Strike Demand for Jury Trial [Doc. 60], filed by defendants GlobalSantaFe

Corporation, GlobalSantaFe Drilling Company, GlobalSantaFe South America, LLC, and

GlobalSantaFe Hungary Services, LLC (collectively, "GSF"). The motion is opposed by plaintiff

Apache Corporation ("Apache") [Doc. 62]. In its motion, GSF seeks to strike the demand for jury

trial by Apache on grounds the right to trial by jury does not exist under the law applicable to this

case.

In her Report and Recommendation,[1] the magistrate judge recommends GSF's motion be

granted and Apache's request for a jury trial be stricken. Apache filed an Objection to the magistrate

judge's Report and Recommendation [Doc. 138], and GSF filed a Response to Apache's Objection

[Doc. 149]. Cognizant that the instant motion impacted more than the discrete issue of whether the

case is tried to a jury, and recognizing neither party had completely and thoroughly addressed the

myriad of issues raised by the motion that was filed, this Court thereafter, conducted oral argument

on the motion on August 5, 2009. At the conclusion of oral argument, this Court permitted the filing

---

[1] This Court notes the Report and Recommendation was authored by Magistrate Judge Mildred E. Methvin, who retired in October 2009. At this time, the presiding magistrate judge in this matter is Patrick Hanna.

of post-argument briefs before issuing a final ruling on the motion. Those briefs have been received

by the Court [Docs. 163, 164, 178, & 184]. After having reviewed the record and the applicable case

law, as well as Apache's Objection, GSF's Response to Apache's Objection, and the post-argument

briefing of both parties, this Court now declines to adopt the magistrate judge's recommendation,

finding it to be contrary to law, and the Motion to Strike Jury Demand [Doc. 60] is DENIED.

## I.      Factual and Procedural Background

This lawsuit arises out of an alleged allision between GSF's jack-up drilling rig, the

ADRIATIC VII, and a platform owned by Apache during Hurricane Rita in September 2005.

Specifically, Apache alleges GSF's rig broke loose during the hurricane and allided with Apache's

platform on the outer continental shelf off the coast of Louisiana at South Marsh Island, Block 128

(hereinafter, "SMI 128"), causing extensive damage to Apache's platform.

In its original Complaint, Apache invokes this Court's jurisdiction under two bases: (1)

"admiralty jurisdiction" pursuant to 28 U.S.C. §1333 and the Admiralty Extension Act, 46 U.S.C.

§30101, and (2) the Outer Continental Shelf Lands Act, 43 U.S.C. §1331, *et seq.* ("OCSLA"). With

respect to the specific claims alleged by Apache against GSF, Apache alleges the following in its

First Supplemental and Amended Complaint:

> The allision, and all damages and losses resulting therefrom, were in no way caused
> or contributed to by any fault or neglect on the part of Apache or any of its joint
> interest owners in SMI 128, their agents, servants and/or employees. Rather the
> allision, damages and losses were solely caused by [GSF's] jack-up drilling rig,
> ADRIATIC VII, and the actions of [GSF], its agents, servants or employees, or
> parties for whom they are responsible, in the following particulars, among others, all
> of which will be more fully established at the trial of this matter:
>
> A.      Failing to insure that the ADRIATIC VII was capable of working at the water
>         depth and in the wether conditions to which it would be exposed during
>         hurricane season;

B.    Failing to properly and timely secure the ADRIATIC VII in light of clear weather information published in advance of the approaching hurricane, including, without limitation, failing to provide a sufficient air gap for the rig;

C.    Failing to timely heed the warnings regarding the approach of Hurricane Rita;

D.    Failing to maintain the ADRIATIC VII in a seaworthy condition; and

E.    Other acts of negligence and/or gross negligence to be established at the time of this trial.

Apache does not make a Fed. R. Civ. P. 9(h)[2] declaration in its Complaint; Apache requests a jury trial. Similarly, in its original Answer, GSF requests a jury trial. In the instant motion, however, GSF seeks to strike the jury demands of both parties, arguing federal question jurisdiction under the Outer Continental Shelf Lands Act, 43 U.S.C. §1331, *et seq.* ("OCSLA"), does not exist under the facts presented, and jurisdiction exists solely under the Court's admiralty jurisdiction, within which there is no right to a jury trial. In response, Apache argues it is entitled to a jury trial because it has asserted an *in personam* maritime claim against GSF on the "law" side of the Court's jurisdiction pursuant to the Admiralty Extension Act,[3] and because the Seventh Amendment

---

[2] Rule 9(h) of the Federal Rules of Civil Procedure states:

**(h) Admiralty or Maritime Claim.**

**(1) *How Designated.*** If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.

**(2) *Designation for Appeal.*** A case that includes an admiralty or maritime claim within this subdivision (h) is an admiralty case within 28 U.S.C. § 1292(a)(3).

Fed. R. Civ. P. 9(h).

[3] Specifically, Apache argues "section (b) [of the Admiralty Extension Act may be brought *in rem* or *in personam* according to the rules governing general maritime law," are more fully discussed on pages 21-26 of this Ruling. Apache argues bringing its claims on the "law" side affords it a jury.

guarantees a party's right to a jury trial for claims such as Apache's against GSF.

## II.     The Magistrate Judge's Report and Recommendation

The magistrate judge concluded this Court has jurisdiction over Apache's claims by virtue of both "admiralty law" (pursuant to 28 U.S.C. §1333 and the Admiralty Extension Act, 46 U.S.C. §30101), as well as OCSLA, 43 U.S.C. §1331, *et seq.* The magistrate judge concluded, however, that such finding does not end the enquiry, finding "if both general maritime law and OCSLA could apply in a case, then the case is to be covered by the general maritime law to which no right to a jury trial attaches."[4] The magistrate judge also concluded maritime law applies "of its own force" in this matter by virtue of the Admiralty Extension Act, and therefore, the court may not apply adjacent state law as surrogate federal law, suggesting that settled the issue.

Apache objected on grounds the Seventh Amendment guarantees the parties in civil cases the right to a jury trial "in suits at common law, where the value in controversy shall exceed twenty dollars." Apache cites several cases in which the Fifth Circuit held the plaintiff's right to a jury trial is preserved where multiple jurisdictional bases exist. *See, e.g., Powell v. Offshore Navigation, Inc.,*

---

The Admiralty Extension Act states:

> (a) In general. - *The admiralty and maritime jurisdiction of the United States extends to and includes cases of injury or damage, to person or property,* **caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land.**

> (b) Procedure.--A civil action in a case under subsection (a) may be brought in rem *or in personam according to the principles of law and the rules of practice* **applicable in cases where the injury or damage has been done and consummated on navigable waters.**

46 U.S.C. §30101 (emphasis added).

[4] *See* Report and Recommendation of Magistrate Judge, Doc. 132, p.5.

644 F.2d 1063 (5th Cir. 1981); *Romero v. Bethlehem Steel Corp.*, 515 F.2d 1249 (5th Cir. 1979).[5]

Therefore, Apache argues because this Court has dual bases for jurisdiction – "admiralty law" i.e.,

general maritime law and under the Admiralty Extension Act, and OCSLA – the plaintiff's right to

a jury trial is preserved by the Seventh Amendment.

### III.   Standard of Review

With some exceptions inapplicable for purposes of this motion, a magistrate judge may hear

and determine any pre-trial matter pending before a district court. 28 U.S.C. §636(b)(1). Federal

law affords the magistrate judge broad discretion in the resolution of non-dispositive matters. *See*

Fed. R. Civ. P.72(a).   With regard to a non-dispositive matter, a district court will reverse a

magistrate judge's ruling only if the party challenging the decision demonstrates that the magistrate's

determination was clearly erroneous or contrary to law. *Id.*; *Castillo v. Frank*, 70 F.3d, 382, 385-86

(5th Cir. 1995).

### IV.   Law and Analysis

The issues raised by the motion before the Court are akin to loose threads on a sweater, each

separate and distinct; however, the more one pulls on one thread, the more of the sweater one

unravels. Although the motion is couched within the issue of whether this case is tried to a jury, the

motion, also, implicates three separate but interrelated issues: (1) the basis of this Court's

jurisdiction, (2) what substantive law is applicable to each of the claims made as against each party,

and (3) what procedural law is applicable to the claims made.

---

[5] As will be discussed in greater detail herein below, *Powell* and *Romero* are distinguishable as the alternative basis for jurisdiction was diversity jurisdiction.  It is undisputed by the parties that where the district court has jurisdiction over the plaintiff's claims by way of admiralty law and *diversity*, a designation under 9(h) has not been made, the right to a jury trial is maintained, notwithstanding the application of maritime substantive law.

The jurisprudence is clear, substantive law to be applied to a matter cannot merely be agreed upon by the parties without some basis in law.  As the Fifth Circuit stated in *Texaco Exploration & Production, Inc. v. AmClyde Engineered Products Co., Inc. ("AmClyde")*, 448 F.3d 760, 772 (5th Cir. 2006), this Court cannot rely on the parties' "bare conclusion" that a particular body of substantive law applies in a case.  Rather, the Court must determine what body of substantive law applies in a given case.

Additionally, under this particular factual scenario, the argument that how one frames the issue controls the outcome is particularly true.  If the issue is framed one way, one result is reached; framed another way, the result is much different.  Considering the foregoing, this Court will consider each alleged basis for jurisdiction to determine whether Apache is entitled to a jury trial.  Based on the manner in which *this Court* frames the issues, this Court concludes Apache is entitled to a jury trial as to its claims made against GSF, but agrees the question requires a complex analysis which, at multiple junctures, could end in a different result and invites clarification of the issues by the appellate court.

Because of the breadth of the question presented for review, this Court must begin with a brief discussion of the substantive and procedural law impacting the right of a litigant to a jury trial.

### 1.    The Seventh Amendment and Fed. R. Civ. P. 38

Apache relies heavily on the language of the Seventh Amendment in support of its position that it is entitled to a jury trial, inasmuch as Apache argues it has asserted its claims against GSF on the "law" side of the Court.  The Seventh Amendment states:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

U.S. CONST. AMEND. VII.

However, the broad language of the Seventh Amendment does not end the enquiry if the body of law which governs the claims at issue is, as in this litigation, maritime law, as it is without question, claims brought within the Admiralty, alone, historically and procedurally are not afforded a jury trial in federal court. Indeed, Rule 38 of the Federal Rules of Civil Procedure states:

> **(a) Right Preserved.** The right of trial by jury as declared by the Seventh Amendment to the Constitution--or as provided by a federal statute--is preserved to the parties inviolate.
> . . .
>
> **(e) Admiralty and Maritime Claims.** *These rules do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim **under Rule 9(h)**.*

Fed. R. Civ. P. 38(a) & (e) (emphasis added).

The Fifth Circuit's finding in *Powell v. Offshore Navigation, Inc.*, 644 F.2d 1063, 1068 (5th Cir. 1981) affirms the right to jury trial is a *procedural* matter rather than a substantive one.[6]

Although the parties have agreed from the outset that maritime *substantive* law applies to Apache's claims made against GSF, they dispute the *procedural right* to a jury trial. Apache did not invoke Rule 9(h), and neither party had adequately addressed the assertion of maritime law or the distinction between applicable substantive and procedural law, in its original briefing on the motion to strike. Thus, given the jury issue and Judge DeMoss's directive in *AmClyde*, this Court was compelled to determine what substantive and procedural law applies to the discrete issue presented.

To determine upon what this Court's jurisdiction is based, and what substantive law applies – and, hence, begin the enquiry into what procedural law applies and thus, whether a jury trial is allowed – this Court must determine what claims are alleged by Apache against GSF and the

---

[6] This Court is aware of the Supreme Court's just decided opinion in *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 130 S.Ct. 1431 (2010). *Shady Grove* has not been addressed by the parties as it post dates all argument by the parties, and on its face, does not control the issue at hand, thus this Court does not address the issues raised in *Shady Grove*, or any potential application of *Shady Grove* to the factual or legal arguments made in this case.

Court's basis for jurisdiction with respect to those claims.[7] Only then can the Court determine what substantive law applies to those claims and thus, whether under the applicable procedural law, Apache is entitled to a jury trial. Review of Apache's Complaint shows Apache's claims are for *pre-allision vessel negligence* on the part of *vessel personnel*, based upon *decisions made for or about the navigation of GSF's jack-up rig* – a vessel[8] – in their handling, mooring, and securing of the GSF jackup rig, while that rig was on navigable waters, resulting in an allision. As noted there are *no claims made by GSF* against Apache for *platform based negligence*.

Thus, under the facts of this case, jurisdiction is argued to be couched in terms of admiralty jurisdiction, OCSLA, the Admiralty Extension Act, or all three.

### 2.    Admiralty Jurisdiction Pursuant to 28 U.S.C. §1333

Apache invokes this Court's admiralty jurisdiction under 28 U.S.C. §1333, which states:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
>
> > (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled. . .

28 U.S.C. §1333(1).

Under well-established Fifth Circuit jurisprudence, admiralty jurisdiction is determined by a two-part test of (1) situs ("location") and (2) "status" ("connection with maritime activity"). *See Texaco Exploration & Production, Inc. v. AmCylde Engineered Products Co., Inc. ("AmClyde"),*

---

[7] The Court notes GSF has not alleged any counterclaims against Apache, and there are no third-party demands in this lawsuit.

[8] It is well-settled that jackup rigs may be vessels. *See Vickers v. Chiles Drilling Co.*, 822 F.2d 535, 537 (5th Cir. 1987). *See also Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229, 233 (5th Cir. 1985) (declaring a jack-up rig in tow to a new site was a "vessel on navigable water"at the time its leg struck Marathon's pipeline, a fixed structure on the seabed).

448 F.3d 760, 770 (5th Cir. 2006); *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513

U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995); *Sisson v. Ruby,* 497 U.S. 358, 110 S.Ct. 2892,

111 L.Ed.2d 292 (1990); *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d

300 (1982); *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio,* 409 U.S. 249, 93 S.Ct. 493, 34

L.Ed.2d 454 (1972).

　　　"Situs" is satisfied if the alleged **tort** occurred on navigable waters, **or, if the injury was**

**suffered on land**, if the alleged *tort* was caused *by a vessel on navigable waters*.  *See Hufnagel,*

182 F.3d at 351, *citing Grubart,* 115 S.Ct. at 1048; *AmClyde,* 448 F.3d at 770. *In the instant case,*

*the alleged injury was suffered by and on the platform – thus "on land," and the tort, the alleged*

*negligent acts, are alleged to have been caused by those responsible for and related to the rig –*

*thus, by a vessel on navigable waters.* Therefore, "situs" is satisfied. The allision itself – the vessel

striking a stationary object – caused by alleged acts of negligence occurring prior to the actual

allision, and alleged to have taken place aboard or in relation to the vessel prior to the allision,

constitute Apache's claims made against GSF.  Therefore, all allegations of negligence made by

Apache against GSF for the damage suffered to its platform, are alleged to have been caused by a

vessel on navigable waters.  Therefore, this Court concludes the "situs" factor is satisfied.

　　　"Status" is, itself, a two-part test: (a) "whether the type of incident involved has the potential

to disrupt maritime commerce," and (b) "whether the general character of the activity giving rise to

the incident shows substantial relationship to traditional maritime activity." *AmClyde,* 448 F.3d at

770-71.  It is at this point of the analysis that the manner in which the issue is framed becomes of

paramount importance.  To wit, if one defines the "activity giving rise to the incident" in terms of

the alleged tort, i.e., the negligent "vessel-related" activity – that is, a vessel's, i.e., jackup rig's not

having been anchored or moored properly, breaking free, and running free during a storm and ultimately alliding with a fixed structure, *i.e.*, the platform -- this Court concludes such activity certainly has the potential to disrupt maritime commerce.[9]  Indeed, once the rig broke free of its moorings, the rig itself was a danger to both other vessels and to fixed structures found in and on navigable waters creating risk of collisions and allisions, and posing a hazard to shipping.   Indeed, the rig i.e., a vessel, was running free on navigable waters and could have just as easily collided with another vessel, which indisputably, would have disrupted maritime commerce.[10]  Thus, the Court concludes that, *when framed vis-a-vis the standpoint of the tort, i.e., the alleged vessel negligence, and the rig's or its personnel's conduct*, i.e. their alleged failure to properly secure the vessel for a storm, the "activity giving rise to the incident" has the potential to disrupt maritime commerce. Under this scenario and analysis, the first prong of the status test is satisfied.

With respect to the second prong of the "status" test, this Court similarly concludes that, when framed *vis-a-vis* the standpoint of the alleged tort, *i.e.*, the alleged vessel negligence and the rig's and rig's personnel's conduct, **a vessel** running free in the open waters with the potential to disrupt maritime commerce would surely bear a "substantial relationship to traditional maritime activity." As the U.S. Supreme Court noted in *Grubart*, 513 U.S. 527, 115 S.Ct. 1043 at 539-540:

> In the second *Sisson* enquiry, we **look to** whether the **general character of the activity giving rise to the incident** shows a substantial relationship to traditional maritime activity.   We ask **whether a tortfeasor's activity**, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand.  **Navigation of boats in navigable waters clearly falls within the substantial relationship**, *Foremost*, 457 U.S. at 675, 102 S.Ct., at 2658, **storing them at a marina on navigable waters is close enough**, *Sisson, supra*, 497 U.S. at 367, 110 S.Ct., at 2898; whereas in flying an airplane over the water,

---

[9]*See Grubart*, 513 U.S. 527, 115 S.Ct. 1043 (1995).

[10] There is no evidence in this case this rig was affixed to this platform in any fashion.

*Executive Jet*, 409 U.S., at 270-271, 93 S.Ct. At 505-506, as in swimming, *id.*, at 255-256, 93 S.Ct., at 98-499, the relationship is too attenuated.

On like reasoning, the "activity giving rise to the incident" in this suit, *Sisson, supra*, 497 U.S., at 364, 110 S.Ct. At 2897, **should be characterized as repair or maintenance work on a navigable waterway performed from a vessel. Described in this way, there is no question that the activity is substantially related to traditional maritime activity, for barges and similar vessels have traditionally been engaged in repair work similar to what Great Lakes contracted to perform here.** (emphasis added)

Here, *the activity involved which resulted in the allision* and damage to the platform **was the securing of a vessel in navigation for an anticipated storm**. An alleged failure to properly secure a vessel for a storm, the vessel's breaking free of its moorings and anchorage, running free in navigable waters and striking a stationary object clearly bears a substantial relationship to traditional maritime activity. The fact the vessel, prior to breaking free, was engaged in oil and gas work should not govern the issue. **The tort, and subsequent allision did not grow out of oil and gas activities, rather grew out of the activities necessary to secure a vessel during a storm.** Described this way, there is no question the activity is substantially related to traditional maritime activity.[11] Therefore, this Court finds, when a vessel, here a drilling rig, allegedly was moored or anchored improperly, and breaks free of its anchorage or moorings during a storm, runs free in the navigable waters, and strikes a stationary platform, the "**activity *giving rise to the incident* shows substantial relationship to traditional maritime activity."**

Considering the foregoing, this Court concludes the second factor of the "status" test is met and thus, maritime *jurisdiction* exists. This Court's conclusion admiralty jurisdiction exists is bolstered by the Fifth Circuit's opinion in *Tennessee Gas Pipeline v. Houston Casualty Ins. Co.*, 87 F.3d 150, 155 (5th Cir. 1996), where inherent within the court's holding, is the assumption a tort

---

[11]*See Grubart*, 513 U.S. 527, 115 S.Ct. 1043 at 540.

-11-

claim for damages to a fixed platform caused by its being struck by a vessel in navigation due to the vessel's negligence presents maritime jurisdiction, notwithstanding the fact the court, also, had *jurisdiction* over the case by virtue of OCSLA.[12]   Of greater interest, perhaps, in *Tennessee Gas Pipeline*, is the determination by the Fifth Circuit that *jurisdiction* under admiralty and OCSLA *are not mutually exclusive.*[13]

### 3.   **OCSLA Jurisdiction**

Apache, also, invokes this Court's jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §1331, *et seq.*, and argues jurisdiction exists under the OCSLA, and thus, Apache is entitled to a jury trial.  OCSLA provides, in pertinent part, "[t]he subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition...." 43 U.S.C. § 1332(a).  Thus, the district courts of the United States have jurisdiction over claims "arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf...." 43 U.S.C. § 1349(b)(1).  *See, e.g., Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 349 (5th Cir. 1999).  As the Court stated in *Hufnagel*:

---

[12] In *Tenn. Gas Pipeline*, the court stated:

> Our conclusion that OCSLA confers original jurisdiction over this suit *is unaffected by the maritime nature of the underlying claim. In Recar* we considered whether OCSLA conferred subject matter jurisdiction over the plaintiff's action to recover damages for injuries sustained on the OCS. The plaintiff argued that OCSLA did not confer jurisdiction because of the maritime nature of the case. We held that the district court **may have both admiralty and OCSLA jurisdiction.**

87 F.3d at 155 (emphasis added).

[13]*See* fn 12.

Congress enacted OCSLA to provide a federal body of law to govern operations on the outer Continental Shelf. . . .**OCSLA is exclusively federal law.**  However, recognizing that the statutory federal law may in some areas be inadequate, **OCSLA incorporates aspects of the laws of adjacent states, where those laws are not inconsistent with OCSLA. These incorporated state laws become "surrogate federal law," and are considered exclusively federal law when applicable under OCSLA. . . .**

182 F.3d at 349 (internal citations omitted) (emphasis added).

OCSLA provides:

To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon . . .

43 U.S.C. §1333 (a)(2)(A).

In *Tennessee Gas Pipeline v. Houston Casualty Ins. Co.*, 87 F.3d 150 (5th Cir. 1996) and *AmClyde*, 448 F.3d 760 (5th Cir. 2006), the Fifth Circuit, *citing Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988), applied a "but for" test to conclude OCSLA grants a *jurisdictional base* for an allision between a vessel and a platform even when only vessel negligence is alleged. Acknowledging the use of a "but for" test "implies a broad jurisdictional grant" under OCSLA, thus, it is clear the Fifth Circuit – in cases such as *Tennessee Gas* and *Recar* – made a determination that "a broad, not a narrow, reading of this grant is supported by the clear, exertion of federal sovereignty' over the OCS." 87 F.3d at 155.  Apache cites *Tennessee Gas* for support for the proposition that, because OCSLA *jurisdiction* applies, Apache is entitled to a trial by jury. However, *Tennessee Gas*, alone, cannot take Apache to that ultimate conclusion. Apache's argument goes beyond the holding of *Tennessee Gas* – rather, the enquiry does not stop with *Tennessee Gas*, as this

Court will explain.[14]

In light of the clear language of *Tennessee Gas* and *AmClyde*, this Court must conclude OCSLA jurisdiction exists in this case, as this case involves an allision with a platform engaged in the production of oil and gas, found on the Outer Continental Shelf.  The Fifth Circuit has made clear its determination that "but for" the existence of an oil and gas company's operation on a platform on the outer continental shelf, there could be no accident or injury to such a platform, thus the broad grant of *jurisdiction* is found.  Thus, this Court finds *jurisdiction* under the Outer Continental Shelf Lands Act.[15]  However, again, to end the enquiry at this juncture, would be premature, as **a jurisdictional determination does not, in all cases, define the substantive law** which will apply; to the contrary, even within OCSLA, the substantive law is not fully determined.[16]

---

[14] Apache cites two additional cases in support of its position – *Poirrier v. Nicklos Drilling Company*, 648 F.2d 1063 (5th Cir. 1981) and *Williams v. M/V/ SONORA*, 985 F.2d 808 (5th Cir. 1993) – both of which pre-date *Tennessee Gas* and which this Court, therefore, will not discuss herein.

GCF, also, cites two other cases in its original motion that are factually distinguishable, but informative. The first case – *Marathon Pipeline Co. v. Rowan Companies*, 761 F.2d 229 (5th Cir. 1985) – involved a jack-up rig that ruptured a pipeline lying on the seabed of the OCS.  A part used in repairing the pipeline (hydrocouples) failed because of a latent defect, causing additional expense to the pipeline owner.  The owner of the rig settled with the pipeline owner for all repair expenses and then sought indemnity or contribution from the part manufacturer for the expenses attributable to its failure.  The Fifth Circuit held the action *for indemnity* was governed by maritime law. Thus, the case is factually distinguishable from our case, but the court nevertheless held maritime law applied to the action for indemnity/contribution.

The second case – *Continental Oil Co. v. London Steam-Ship Owners' Mutual Ins. Assoc.*, 417 F.2d 1030 (5th Cir. 1969) – is distinguishable as the case was decided before *Tennessee Gas's* "but for" test.  The case is, also, factually distinguishable, as it dealt with the issue of whether a platform owner could sue *an owner of a vessel* which *struck the platform on the OCS under the Louisiana Direct Action Statute*.  The court held because the admiralty remedies available to the plaintiff were not in any way incomplete, inconvenient, or unavailable, either substantive or procedurally, admiralty law applied to the platform owner's claims, and the Direct Action statute was not applicable.

[15] This Court has some degree of concern as to whether "situs" should be found for purposes of OCSLA if one frames the issue *vis-a-vis where* the *negligence* occurred and *the activity involved* was vessel operation, particularly where *there are no claims for platform negligence*.  However, it would seem the Fifth Circuit has addressed and answered this question by way of the "but-for" test in *Tennessee Gas*.

[16] Again, OCSLA states in relevant part, "[t]o **the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations** . . . the civil and criminal laws of each adjacent State . . . are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf . . ." 43 U.S.C. §1333 (a)(2)(A).

### What Substantiative Law Applies

It is well settled maritime law applies to maritime torts, however, it is equally well settled maritime *jurisdiction* does not, in and of itself, mandate application of maritime law.

> . . . Contrary to what the city suggests, . . . exercise of federal admiralty jurisdiction does not result in automatic displacement of state law. It is true that, "[w]ith admiralty jurisdiction comes the application of substantive admiralty law." But to characterize that law, as the city apparently does, as "federal rules of decision," is
>
>> a destructive oversimplification of the highly intricate interplay of the States and the National Government in their regulation of maritime commerce. It is true that state law must yield to the needs of a uniform federal maritime law when this Court finds inroads on a harmonious system. But this limitation still leaves the States a wide scope.

*Romero v. International Terminal Operating Co.*, 358 U.S. 354, 373, 79 S.Ct. 468, 480-481, 3 L.Ed. 2d 368 (1959) (footnote omitted.)

> . . .
>
> **Thus, the city's proposal to synchronize the jurisdictional enquiry with the test for determining the applicable substantive law would discard a fundamental feature of admiralty law, that federal admiralty courts sometimes do apply state law**.

*Grubart*, 513 U.S. 527, 115 S.Ct. 1043 at 546 (internal citations omitted) (emphasis added).

As previously noted, it is equally clear that jurisdiction under OCSLA does not, in and of itself, mandate application of the adjacent state's law. Thus, this Court must address the question of what substantive law applies to Apache's claims made against GSF.

Here, the claims made in tort by Apache against GSF are exclusively maritime in nature – claims for vessel negligence resulting in an allision. Thus, *as to those claims*, under the facts at hand, maritime jurisdiction would, as Justice Souter in *Grubart*, 513 U.S. at 540, suggested, be wed with maritime substantive law. This Court finds, and all parties agree, maritime substantive law applies to the claims made by Apache against GSF for vessel negligence resulting in an allision.

Neither party argues, and this Court agrees, OCSLA, although granting a *jurisdictional base*, does not mandate application of adjacent state law to the claim made for vessel negligence. It is undisputed, if there were claims *made against the platform, for platform negligence*, OCSLA, rather than maritime law, could grant not only jurisdiction, but also, the applicable substantive law for those platform based claims. However, here, there are no such claims and the claims made are for *vessel negligence*, resulting in *an allision*, thus, maritime substantive law applies to the claims made by Apache against GSF. However, again, the inquiry cannot end at this juncture. *Apache argues the jurisdictional grant under OCSLA brings with it the procedural right to a jury trial*, whereas, GSF argues the **jurisdictional grant under the general maritime law affords no right to a jury**, and argues jurisdiction is not found under OCSLA. This Court has found jurisdiction under OCSLA, thus, undercutting GSF's primary argument, however, again, the inquiry is not complete.

This Court has found dual jurisdiction under the Admiralty and under OCSLA. The Fifth Circuit has determined, and this Court agrees, where there are dual bases for jurisdiction – *i.e.,* admiralty jurisdiction and OCSLA jurisdiction -- federal maritime law *can* apply as the applicable *substantive* law. *See Tennessee Gas*, 87 F.3d at 154.[17] However, *Tennessee Gas* did not, also, address which *procedural rules* should govern, as to the right to a jury trial even when maritime

_____

[17] In *Tennessee Gas*, the court stated:

> Furthermore, 43 U.S.C. § 1333(f) makes clear that the applicability of OCSLA law under 43 U.S.C. § 1333(a) shall not give rise to any inference that other provisions of law (such as general maritime law), do not also apply. *It is not surprising, therefore, that this court has declared that where OCSLA [law] and general maritime law both could apply, the case is to be governed by maritime law.*

87 F.3d at 154 (emphasis added).

Additionally, the Fifth Circuit has held where admiralty and OCSLA *jurisdiction* overlap, the case can be governed by maritime law. *See, e.g., Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1229 (5th Cir.1985).

substantive law applies.  Although there is no case directly on point, instruction on this point is offered in the Fifth Circuit's decision in *AmClyde*. In *AmClyde,* certain oil companies brought a products liability action against a company that had manufactured a crane used on the Petronius construction project (an offshore oil and gas production facility), a platform.  The plaintiff companies alleged a defect in the crane had caused a portion of the deck to fall into the Gulf of Mexico above the Outer Continental Shelf off the coast of Alabama and Louisiana as it was being lifted by the crane and positioned above the already-constructed support frame to which it was to be affixed.  In a separate cause of action, the insurer of the construction project, which had issued a builder's risk policy, asserted a subrogation claim against entities allegedly involved in the loss of this deck section.  The actions were consolidated.  Thereafter, the district court denied the plaintiffs' request for jury trial on their products liability claims, finding admiralty law's application extinguished the jury trial right.  In the order striking the jury trial, the district court determined no fact or allegation permitted the exercise of OCSLA jurisdiction because admiralty law *alone* governed and the admiralty did not give rise to a jury trial.  The plaintiff companies appealed that ruling, among others.

On appeal, the Fifth Circuit held the district court erred in determining its basis for subject matter jurisdiction; the Fifth Circuit finding jurisdiction *was premised solely on OCSLA*, and **not on admiralty jurisdiction** overturned by the lower Court.[18]  With that in mind, the Fifth Circuit turned its attention to the district court's denial of jury trial, noting it was necessary "*to determine* the *applicable substantive law* in order to address whether the denial of jury trial was reversible

---

[18]This Court notes the negligence involved was *platform negligence* – i.e., a defect in a crane mounted on the platform – and the contracts involved in the consolidated case were builder's risk policies, likely non-maritime contracts.

error." *AmClyde*, 448 F.3d at 771. Citing *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*

The court applied the three factors of the *PLT* test to determine whether adjacent state law applied

as surrogate federal law **under OCSLA**. *AmClyde*, 448 F.3d at 774, *citing PLT*, 895 F.2d at 1047.

However, one must be mindful, the Court had earlier found **no maritime jurisdiction**, rather *sole*

**jurisdiction was granted by OCSLA**. Applying the *PLT* test to determine what substantive law

applied under a grant of jurisdiction, **solely under OCSLA**, to those facts, the Court determined

OCSLA situs and status was met, *and maritime law did not apply of its own force*, as there was

insufficient connection between the underlying torts[19] and traditional maritime activity. With respect

to the third factor – whether state law was inconsistent with federal law – the court noted:

> Accordingly, we also *must remand for further proceedings* **because the district court erred in its application of substantive maritime law to Texaco's claims.** An additional difficulty presents on this record: no party identifies the adjacent state such that the law of the adjacent state may be applied.  On remand, the first order of business will be the determination of which state's law applies *under OCSLA. Subsequently, the district court should address the jury demand in light of the applicable state products liability and negligence law.*

*Id.* at 775 (internal citation omitted) (emphasis added).

In the case at hand, this Court has determined jurisdiction is granted by both the admiralty

and OCSLA, which was not the case in *AmClyde*.  Under the facts unique to this case, this Court has

no concern finding maritime substantive law applies to the claims made by Apache against GSF for

damages resulting from an allision alleged to have been caused solely by vessel negligence. Thus,

as to the tort involved, the applicable substantive law is the law of the admiralty, and all agree

Admiralty *jurisdiction*, and substantive law, alone, do not necessarily grant the procedural right to

---

[19] The appellate court specifically held "[t]he damages allegedly caused by a defectively designed or maintained portion of the crane (or by defective wire rope or by the negligent inspection and maintenance of those two specific parts engaged in the compliant tower's construction) are not the stuff of traditional maritime activity on the high seas." *AmClyde*, 448 F.3d at 774.

a jury.

However, care should be taken not to oversimplify and succumb to the desire to conflate all claims made against all parties into the *jurisdictional determination* and *conflate the procedural inquiry into the substantive enquiry.* As instructed by *Grubart, supra*, the jurisdictional determination does not, necessarily, determine the applicable *substantive law* to a given claim. Also, here, as said, in this matter there is but one set of claims made, those of Apache against GSF for vessel negligence resulting in an allision which caused damages to the platform, and it is well settled claims brought *exclusively* under the Admiralty are not afforded a jury trial.

An allision is the quintessential maritime tort – a vessel/ship's striking a stationary object, resulting from *alleged negligence of the personnel responsible for the vessel* when *preparing the vessel* for an oncoming storm, and the **vessel's** breaking free of its *moorings or anchorage* during a storm and *drifting free* **on the navigable waters** and striking a stationary object. Thus, **the underlying tort/torts** bear the most intimate connection to and with traditional maritime activity as could be envisioned – preparing a vessel, on navigable waters, for an impending storm, making a strong argument for the application of maritime jurisdiction, maritime substantive law, and its intimately intertwined procedural mandate of no jury trials being afforded. However, as this Court has also noted, even these determinations, in and of themselves, do not end the enquiry.

### 4.    Dual Bases for Jurisdiction – Does One Get a Jury?

This Court has determined it has dual bases for jurisdiction under the Admiralty and OCSLA; that maritime substantive law applies to Apache's claims against GSF; that it is a well settled tenet of maritime law a plaintiff is not entitled to a jury trial to the cases brought, exclusively, within Admiralty jurisdiction; that it is equally well settled a plaintiff is entitled to a jury trial if along with

-19-

maritime jurisdiction a separate and independent basis for jurisdiction exists when that basis is diversity, 28 U.S.C. §1332, and no designation had been made under Fed. R. Civ. P. 9(h). Thus, the question before the Court becomes whether a plaintiff is entitled to a jury trial where the bases for jurisdiction are admiralty jurisdiction and *OCSLA*, when maritime substantive law applies to the claims made, and the plaintiff has not made a Rule 9(h) designation, a question which has not been directly answered by the appellate courts or the U.S. Supreme Court. Notwithstanding the parties arguments to the contrary, neither *Tennessee Gas* nor *AmClyde* answers this discrete question. In *Tennessee Gas*, the Fifth Circuit's ultimate determination was whether the case had been properly removed to federal court. Concluding OCSLA provided the Court with original jurisdiction over the plaintiff's claims, the Court concluded the district court's remand of the case was improper. The issue of a jury trial was not part of the court's analysis. Similarly, in *AmClyde*, after concluding the court had jurisdiction via OCSLA, the court remanded the case to the district court for a determination as to what substantive law applied to the case, therefore an answer to the question of whether plaintiff was entitled to a jury trial was not at issue before the appellate court.

Therefore, this Court finds the discrete issue now before the Court to be one of first impression and this question being one of first impression, this Court must make its best determination and invites the Fifth Circuit to settle the question.

There is however, one final thread that must be examined before this Court can rule on the matter at hand. Apache has, also, invoked the Admiralty Extension Act as an additional basis for jurisdiction in this case. For the reasons that follow, this Court feels compelled to disagree with the magistrate judge and the parties and find the Admiralty Extension Act does not apply to the facts in this case.

-20-

### 5.    The Admiralty Extension Act, 46 U.S.C. §30101

Apache argues application of the Admiralty Extension Act.  Although, perhaps disputing the

procedural consequence of application of the Admiralty Extension Act, *neither party disputes the*

*application of the Admiralty Extension Act* itself.  However, as noted, this Court cannot accept a

bare-bones allegation of jurisdiction or applicable substantive law made within a pleading, and this

Court would suggest the same rationale should apply to procedural law.  *See AmClyde,* 448 F.3d at

772.  Regrettably, strong argument can be made that a line of cases within the Fifth Circuit calls into

serious question the applicability of the Act *within the context of the facts and circumstances of this*

*case.*  Consequently, this Court invited the parties to fully brief the question; the Court having the

benefit of those briefs now renders this ruling.

The Admiralty Extension Act states:

> (a)  In general. - *The admiralty and maritime jurisdiction of the United*
> *States extends to and includes cases of injury or damage, to person or*
> *property,* **caused by a vessel on navigable waters, even though the**
> **injury or damage is done or consummated on land***.*
>
> (b)  **Procedure.**--A civil action in a case under subsection (a) may be
> brought **in rem** *or **in personam** according to the principles of law and*
> *the rules of practice **applicable in cases where the injury or damage has***
> ***been done and consummated on navigable waters**.*

46 U.S.C. §30101 (emphasis added).  Apache argues the Admiralty Extension Act grants jurisdiction

and paragraph (b) allows for the claims to be brought "in personam," which Apache argues would

equate to being brought on "the law side" and thus, Apache argues, afford a right to a jury.[20]

---

[20]This Court has question whether application of the Admiral Extension Act would ultimately support and
bolster Apache's argument, as this Court notes the language of the last sentence of paragraph (b) which could
arguably mandate the *procedural rules* of the Admiralty *even in cases couched within in personam,* and the Fifth
Circuit has determined the right to a jury trial is procedural.  What the result would be had were the Admiral
Extension Act to apply *along with the OCSLA operating under the broad "but for" analysis,* in light of the explicit
language of the Admiral Extension Act as to procedure found in paragraph (b), procedure, is a question not before
this Court, but one of not small intellectual interest.

Notwithstanding the agreement of the parties and the finding of the magistrate judge that the

Admiralty Extension Act applies in this case, this Court's research uncovered a line of Fifth Circuit

cases that calls the application of the Admiralty Extension Act into serious question *under the facts*

*and claims as plead.* In *Dahlen v. Sec. Ins. Co. of Hartford*, 281 F.3d 487 (5th Cir. 2002), plaintiff,

a barge operator working for Island Operating Company, injured his back while on a platform

situated on the Outer Continental Shelf off the coast of Louisiana while unloading groceries from

a grocery box. Dahlen sued the platform owner and operator, the grocery supplier, and the time

charterer ship owner for negligence, contending the grocery box had been loaded in such a manner

that the supplies for Dahlen's platform were in the back of the box. Dahlen argued he, thus, had

been required to take everything out of the box, set aside the supplies for his platform, and then

reload the other platforms' supplies into the box. Dahlen alleged the full process took approximately

one hour and resulted in serious back injuries. 281 F.3d at 491. The action was filed in state court

but removed to federal court on the basis of federal question jurisdiction *under OCSLA.* The only

claim that went to trial was Dahlen's claim against the owner of the platform *in its capacity as time*

*charterer of the supply vessel*; the jury found the platform owner was not negligent *in its capacity*

*of time charterer* of the supply boat, and Dahlen appealed. The platform owner also appealed the

district court's refusal to grant it indemnity under the charter contract between it and the chartering

ship owner.

The platform owner's appeal implicated the application of the Admiralty Extension Act,

which the district court had ruled applied in the case. On appeal, the Fifth Circuit concluded it was

error to apply the Admiralty Extension Act, stating "[i]n order to invoke maritime jurisdiction under

the Extension Act, a plaintiff *injured on shore* must allege that the injury was caused by "a *defective*

-22-

*appurtenance of a ship* on navigable waters." *Dahlen*, 281 F.3d at 493 (emphasis added).  The court specifically stated:

> . . . the holding of this Circuit in *Egorov* makes it clear that for the Extension Act to apply, *the defect must be in the appurtenance and not be due to the personnel performing services for the vessel. Egorov*, 183 F.3d at 456.  What is alleged in the present case is not a defect in the grocery box but in *the manner in which groceries were loaded into the box. Egorov* **clearly indicates that the Extension Act should not apply to such a case.**  This Court, therefore, holds that the Admiralty Extension Act was improperly applied in the present case and that Louisiana state law, not federal maritime law, should have applied to this negligence action.

*Id.* at 494 (emphasis added).

Thus, in Dahlen, the Fifth Circuit cited its decision in *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey,* 183 F.3d 453, 456 (5th Cir.1999), in which the Fifth Circuit held the Admiralty Extension Act is meant to apply to the *vessel and her appurtenances "and does not include those performing actions for the vessel." Egorov,* 183 F.3d at 456.  Specifically, in *Egorov,* the Court held the Admiralty Extension Act applies to *the vessel and her appurtenance and not to the personnel performing services for the vessel. Id.* at 456.  Here, *Apache does not argue a defect in the vessel, rather argues the negligence of the personnel performing services for the vessel.*[21]

The *Dahlen* and *Egorov* decisions were rendered in 1999, **after the United States Supreme Court's 1995** decision in *Grubart, Inc. v. Great Lakes Dredge & Dock*, 513 U.S. 527, 115 S.Ct., 1043 (1995), in which the U.S. Supreme Court cited the 1963 Supreme Court decision, *Gutierrez v. Waterman S.S.,* 373 U.S. 206, 210-11, 83 S.Ct. 1185, 1188 (1963), when addressing the Admiralty Extension Act, wherein the U.S. Supreme Court stated:

> **Respondent and the carrier amici curiae would have the statute limited to injuries actually caused by the physical agency of the vessel or a particular part of it**-such as when the ship rams a bridge or when its defective winch drops some cargo onto a longshoreman. . . . **Nothing in the legislative history supports so**

---

[21] *See* Apache's First Supplemental and Amended Complaint, Doc. 82.

*restrictive an interpretation of the statutory language. **There is no distinction in admiralty between torts committed by the ship itself and by the ship's personnel while operating it, any more than there is between torts 'committed' by a corporation and by its employees.*** (emphasis added).

**The Fifth Circuit** *relied, in part, on Gutierrez, in the Egorov decision*, therefore, this Court is perplexed as to the conclusion it would seem the Fifth Circuit reached in *Egorov* and later applied in *Dahlen*, which purports to limit application of the Admiralty Extension Act to the vessel and her appurtenances and "does not include those performing services for the VI." *Egorov* 183 F.3d, 456 (5th Cir. 1999).

In the instant case, Apache's claims against GSF are for: (1) *failing to insure* that the rig was capable of working at the water depth and in the weather conditions to which it would be exposed during hurricane season; (2) *failing to properly and timely secure* the ADRIATIC VII in light of clear weather information published in advance of the approaching hurricane, including, without limitation, *failing to provide* a sufficient air gap for the rig; (3) *failing to timely heed* the warnings regarding the approach of Hurricane Rita; (4) *failing to maintain* the ADRIATIC VII in a seaworthy condition; and (5) *other acts of negligence* and/or gross negligence. All allegations of **acts of failure by the personnel performing services for the vessel** and **not allegations of a defect in the appurtenance of the vessel herself.** Again, the foregoing allegations, **as plead** are not for defects in the vessel or her appurtenances *per se*[22]; rather, the allegations of negligence are *of those performing actions for the rig.* Indeed, it cannot seriously be disputed that the rig, itself, could not secure itself for an approaching hurricane; the rig, itself, could not maintain itself in a seaworthy condition; the rig, itself, cannot heed warnings, etc. Rather, only people and/or personnel could have performed or not performed those *activities* alleged to have been negligent, as opposed **to**

---

[22]Apache also, has consistently argued it does not bring its claims against GSF *in rem, i.e.*, against the vessel, but *in personam*.

**allegations of a defect in/of the vessel itself or an appurtenance of the vessel**.

Were this Court to consider the *Egorov* and *Dahlen* decisions only, this Court must conclude the Admiralty Extension Act does not apply and does not provide a jurisdictional basis in this case. However, were this Court to focus on *Grubart* and *Gutierrez*, this Court must, it would seem, conclude the Admiralty Extension Act does apply. Of course, it is without question this Court must follow applicable U.S. Supreme Court jurisprudence over appellate jurisprudence. However, the two rulings of the Fifth Circuit **post-date** the U.S. Supreme Court rulings and, in fact, ***Egorov* cites to the earlier U.S. Supreme Court case of *Grubart* to support its holdings**. Thus, this Court is faced with an apparent paradox. GSF urges this Court to disregard the holdings of the Fifth Circuit regarding the scope of the Admiralty Extension Act in *Egorov* and *Dahlen* on grounds these cases are in direct conflict with the Supreme Court's precedent in both *Grubart* and *Gutierrez*. Additionally, GSF argues the Fifth Circuit's overly restrictive interpretation of the Admiralty Extension Act is not based on any actual language found within the Act itself. This Court agrees. However, because ***Egorov* cites the *Grubart* decision**, and because **both *Egorov* and *Dahlen* cite the decision upon which *Grubart* was based – *Gutierrez* – and as both Fifth Circuit cases post-date** the U.S. Supreme Court decision, this Court can only assume the Appellate Court found a different *interpretation* of the earlier U.S. Supreme Court case than would this Court, and regretfully, feels bound to follow the Fifth Circuit's *interpretation of* the earlier U.S. Supreme Court cases.[23] Thus, the Fifth Circuit, ***when interpreting the U.S. Supreme Court decisions***, has found the

---

[23] Had the Fifth Circuit cases pre-dated the *Grubart* and *Gutierrez* decisions, or not relied upon the Supreme Court cases to support their holdings, the argument would be appreciably stronger that this court could disregard the *Egorov* and *Dahlen* decisions. However, the Fifth Circuit specifically cites to the earlier Supreme Court cases. Thus, this Court finds itself constrained to interpret the Admiralty Extension Act in a manner that is consistent with how the Fifth Circuit has interpreted the Supreme Court decisions in *Egorov* and *Dahlen*. This Court anticipates that an interlocutory appeal will be taken with regard to this ruling, and invites the parties to present this issue squarely to the Fifth Circuit for resolution on appeal.

Admiralty Extension Act does not apply where the only claims alleged are for the negligence of personnel and no defect in the vessel or her appurtenances are alleged. Thus, this Court, regrettably, feels compelled to find the Admiralty Exchange Act does not apply under the facts of this case and invites the Fifth Circuit to address this apparent conflict between its decisions in *Egorov* and *Dahlen* and the earlier decided U.S. Supreme Court decisions in *Gutierrez* and *Grubart*.[24]

## V.   Conclusion

Thus, it remains to be determined when *jurisdiction* is grounded under OCSLA and the admiralty, maritime *substantive law* applies to the claims alleged, and *no 9(h) designation* has been made, is the *procedural right* to a jury trial afforded in the same fashion as when dual jurisdiction is found under the admiralty and diversity. This Court noted at the outset, the fact that a plaintiff is entitled to a jury trial in cases where no 9(h) designation has been made and the court entertains *a dual basis* for jurisdiction – under the admiralty by way of the general maritime law and *diversity jurisdiction* – is not in dispute; thus, the question becomes, should the same rule apply if *OCSLA* affords the second basis for jurisdiction?

In addressing this *de novo* question, this Court must revisit the foundational grant of the Seventh Amendment to the U.S. Constitution and the procedural pronouncement of Fed. R. Civ. P. 38(a) & (e). The Seventh Amendment guarantees the right to a jury trial in civil matters where the amount in controversy exceeds $20.00. Fed. R. Civ. P. 38(a) notes, ". . . The right of trial by jury as declared by the Seventh Amendment to the Constitution--or as provided by a federal statute--is preserved to the parties inviolate." Thus the foundational presumption operates **in favor of the right to a jury trial for parties in civil matters** within the federal courts, in fact as Fed. R. Civ. P. 38(a)

---

[24]As suggested in fn 20, this Court has question whether applicability of the Admiralty Extension Act would result in the relief Apache argues. However, that question is not before this Court, as this Court feels constrained to find the Act does not apply.

recognizes, that fundamental right is *inviolate*.

However, Fed. R. Civ. P. 38(e) addresses **the** *procedural rules* **governing** "Admiralty and Maritime Claims" and specifically provides ". . . These rules **do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim** *under Rule 9(h)*," thus, specifically recognizing the mechanism by which the presumptive right to a jury trial on can be overcome – declaration of a claim under Rule 9(h), as being brought **exclusively** under the Admiralty.

Consequently, it would seem, the stronger argument would be the Seventh Amendment right to a jury exists by way of its own application.  However, in matters **designated under 9(h)** as having been brought **exclusively on the equity side of the Court**, *i.e.*, **in the Admiralty**, no right to a jury attaches.  The **procedural** right to a jury trial is recognized and preserved in civil cases by way of Fed. R. Civ. P. 38(a), and, thus, would apply to all parties, "inviolate;" however, Fed. R. Civ. P. 38(e) make clear "these rules" do not create a right to a jury trial for a claim *that is an admiralty or maritime claim* **UNDER RULE 9(h)**.  Thus, it would seem, if the claim made **is a maritime claim,** *and* **is brought exclusively under the Admiralty jurisdiction of the Court** i.e., **has been designated as such pursuant to Rule 9(h),** a right to a jury trial does not flow;[25] **without such a designation under Rule 9(h), however, the presumptive right to a jury, it would seem, remains** absent some separate statutory prohibition.[26]  Therefore, if, as in this case, there has been no designation under Rule 9(h) and a separate and independent basis for jurisdiction exists – here OCSLA, and should the law found to be applicable under OCSLA, the claims made allow for a jury, it would seem the stronger argument would be the presumptive right to a jury trial exists.  Arguably,

---

[25]It is not lost on the Court that such an interpretation, in effect, could operate to strip the defendants of their right to a jury trial, as plaintiff has sole control over and ability to designate a claim under 9(h).  However, this Court can only assume the drafters of Fed. R. Civ. P. 38(a)(e) were aware of this argument as well.

[26]For example, the Federal Tort Claims Act, 28 U.S.C. § 1346(b), 1671-2680, grants jurisdiction and a right of action against the government, however, does not allow for a jury trial for claims made against the government.

therefore, this result should flow whether the independent, non-maritime basis for jurisdiction is found by way of diversity or OCSLA.[27]

Consequently, for the reasons noted above, this Court finds the right to a jury trial attached pursuant to the Seventh Amendment; dual jurisdiction exists under the admiralty and OCSLA, thus, an independent basis for jurisdiction exists beyond the Admiralty; no 9(h) designation was made; OCSLA presents no prohibition against the right to a jury trial,  there being no such prohibition or designation under Rule 9(h), Fed. R. Civ. P. 38(a)(e) establish the Seventh Amendment Right prevails, thus this Court finds the right to a jury trial remains by way of the additional, non-maritime, grant of jurisdiction, here found under OCSLA, and therefore OVERRULES the Magistrate Judge and DENIES GSF's Motion to Strike Jury Trial [Doc. 60].

This Court recognizes the uncertainty and importance of this question and invites the parties to place the matter before the appellate court for full clarification of the important legal issues presented.

THUS DONE AND SIGNED in Lafayette, Louisiana on this 4th day of June, 2010.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[27] Apache briefly references, in support of its position, the Law Review article, *"The Outer Continental Shelf Lands Act's Provisions on Jurisdiction, Remedies, and Choice of Law: Correcting the Fifth Circuit's Mistakes,"* 38 J. Mar. Law & Com. 487, 525-26 (2007) and the position espoused by Professor David W. Robertson for the rule that in a case in which there is both admiralty jurisdiction and *OCSLA jurisdiction*, the same rationale should apply as when jurisdiction is found under diversity and the Admiralty and thus, the plaintiff should be entitled to a jury trial unless the plaintiff has exercised the right granted by Rule 9(h) to institute the action as an admiralty action in federal court (rather than an action at common law).  Thus, Apache suggests, Professor Robertson argues Section 1349(b)(1) admiralty cases (that is, cases with both admiralty and OCSLA jurisdiction) should be treated the same as diversity/admiralty cases respecting the right to a jury unless Rule 9(h) applies.