RECEIVED

AUG - 8 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| APACHE CORP. | CIVIL ACTION NO. 06-1643 |
| VERSUS | JUDGE DOHERTY |
| GLOBAL SANTAFE DRILLING CO., ET AL. | MAGISTRATE JUDGE HANNA |

### MEMORANDUM RULING

Pending before this Court are several re-urged Daubert motions/motions in limine filed by the defendants, GlobalSanteFe Corporation, GlobalSantaFe Drilling Company, GlobalSantaFe South America, LLC, and GlobalSantaFe Hungary Services, LLC ("GSF"), as follows: (1) Defendants' Re-Urged Motion to Exclude Expert Witness Testimony From Plaintiff's Designated Expert, Buck Wyckoff [Doc. 226]; (2) Defendants' Re-Urged Motion to Exclude Expert Witness Testimony from Plaintiff's Designated Expert, W. James Wilkinson [Doc. 227]; (3) Defendants' Re-Urged Motion to Exclude Expert Witness Testimony from Plaintiff's Designated Expert, Kenneth M. Smith, Jr. [Doc. 228]; (4) Motion in Limine [Doc. 229]; and (5) Defendants' Re-Urged Motion to Exclude Expert Witness Testimony from Plaintiff's Designated Expert, David L. Kriebel [Doc. 230]. The motions are opposed by Apache Corporation [Docs. 235, 236, 237, 238, and 239], and GSF has filed Motions For Leave to File Reply Briefs to the motions concerning the testimony of Buck Wycoff and David Kriebel, as well as GSF's Motion in Limine [Docs. 242, 243, and 244]. The motions for leave to file reply briefs are GRANTED.

The facts and procedural history of this case have been laid out in detail in numerous prior rulings of the Court. From a procedural standpoint, it is worth noting the parties have already engaged in one round of extensive motion practice with respect to evidentiary issues, and on August

5, 2009, participated in a full day of oral argument on several evidentiary motions which are re-urged herein.  However, as is well-known to the parties, at the time this Court heard oral argument on the evidentiary motions, this case was set to be heard as a judge trial, thereafter the Court ruled on the first set of motions, ruling the jury request valid and certifying the legal question to the Fifth Circuit. The Fifth Circuit has ruled, upholding this Court's determination, and hence both this Court and the Fifth Circuit have determined this case is properly tried to a jury.

In light of the change from a bench trial to a jury trial, GSF has re-urged several of the motions that were previously filed and ruled on by this Court.  The Court will consider and rule on each re-urged motion in turn.

1.    **Defendants' Re-Urged Motion to Exclude Expert Witness Testimony From Plaintiff's Designated Expert, Buck Wyckoff [Doc. 226]**

In this motion, GSF seeks to exclude the expert testimony of Apache expert witness Buck Wyckoff, who prepared computer simulations/animations on behalf of Apache, which attempt to recreate the subject incident or otherwise illustrate Apache's experts' theories with respect to liability.  GSF filed its first motion seeking to exclude the simulations/animations at trial on July 10, 2009 [Doc. 126]; GSF supplemented that motion on July 27, 2009 [Doc. 153].  At the evidentiary hearing, this Court deferred its ruling on GSF's motion to the time of trial.

GSF does not re-urge the motion on the basis of any new evidence, but rather, seeks a ruling excluding the computer simulations/animations on grounds this Court indicated on August 5, 2009 that if the case was tried to a jury, the Court might rule differently.[1]

---

[1] The entirety of the Court's comments were as follows:

Now it would seem that this particular motion will live or die depending upon how the experts' opinions play out, and this Court can't rule on the majority of those expert opinions until, you know, a lot of them until trial.

Apache opposes the re-urged motion on three grounds: (1) No new evidence or argument has been presented, therefore the Court remains unable to determine the admissibility of the testimony and animation because the trial has not yet begun; (2) the simulation/animation is a demonstrative aid based upon science and the scientific method to show how Apache's experts believe the accident happened; and (3) the simulation/animation will assist the jury in understanding the testimony presented by Apache's experts.   Apache further asserts it "fully intends to meet its burden of [establishing] a proper foundation for Mr. Wycoff's testimony."

Having already considered this issue and deferred the matter to trial, and noting the

---

Now the dichotomy is that Apache is relying, as I said, on certain modalities, certain modeling, et cetera, whereas GSF is relying more on physical evidence, appearance, et cetera, and on a given point and a given expert this flips, and Apache is relying more on physical evidence and GSF on modeling.

Neither is correct in whole, but neither has, I would suggest, a sufficient underlying basis in fact such that a computer animation would be of benefit to this Court. I tend to think that the computer animation which is being sought to be introduced by Apache has grave risk and limited benefit to the Court or the trier of fact in this matter, which is the Court. It would be the same, if not greater with a jury, it would seem. And this Court at this sitting cannot be absolutely certain whether this risk will be worth the potential benefit.

However, the risk is that the assumptions, the underlying assumptions made by the multiple experts who create the opinions who are put into the computer animation just add to the assumptions that are contained in the computer animation itself. And because it does not seem that anyone for certain knows what happened at the exact location, at that exact time during Hurricane Rita, that the benefit is very, very limited, because all it does at this point in time is create a very persuasive, by the nature of computer animations, argument for what did occur without knowing what occurred.

Now this is separate from a situation where we know the facts. We know that a vehicle traveling at such speed because they have the odometer, speedometer, whatever, hit another object or another car at blank time, what the weather conditions were, what the road conditions were, et cetera, you can do a computer animation as to what happened and why it broke or why it didn't break, or whatever.

But when we don't know what happened and everything is either extrapolation, assumption, modeling or theory, then to take that and turn it into a theoretical computer presentation has the risk of it being overly persuasive. **That is certainly the case if this were a jury trial. And quite frankly, I find it to be the case in a judge-tried case as well in this instance.** So my gut on this is that I am not going to find that that computer animation is going to be of benefit to the Court, sufficient relevance and benefit to the Court that it will outweigh the risks of its being presented to the Court.

3

requirement that Apache meet its burden of establishing a proper foundation *before* the computer animation is presented to the jury, this Court considers GSF's second request for a ruling on the issue under Rules 104 and 403[2] of the Federal Rules of Evidence.  After consideration of the re-urged motion, this Court concludes its prior ruling should not be changed.  Indeed, until the experts have actually testified in the case, this Court cannot know whether a proper foundation has been, or actually can be, laid for the presentation of the particular simulation/animation.  Until the experts and witnesses have testified, this Court cannot know what and whether the facts relied upon to create the computer animation have been sufficiently established.  Nor can this Court know what underlying assumptions, if any, the computer re-creation relies upon; until that is known, this Court cannot make a definitive ruling as to the possible probative value and possible prejudice.  However, this Court, again, notes it has grave concern as to the usefulness and relevance of the computer re-creation and again notes it will not allow the jury to see the computer re-creation unless, or until, a proper foundation has been laid so that the Court can determine if the possible probative value outweighs the possible prejudice.  Apache acknowledges it must lay a proper foundation before it can attempt to introduce the simulation/animation at trial, and it will be required to do so.

Considering the foregoing, GSF's re-urged motion for a ruling on this issue prior to trial is DENIED, and the issue remains DEFERRED to trial.

---

[2] Rule 104 requires that the Court decide any preliminary questions concerning the admissibility of evidence.  Rule 403 states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Fed. R. Evid 403.

2.      **Defendants' Re-Urged Motion to Exclude Expert Witness Testimony from
Plaintiff's Designated Expert, W. James Wilkinson [Doc. 227]**

In this motion, GSF seeks to exclude the anticipated testimony of Apache's expert W. James

Wilkinson, who is expected to testify that if GSF had raised the air gap of the Adriatic VII, the rig

would have survived the hurricane.  GSF filed its first motion seeking to limit the testimony of Mr.

Wilkinson on July 10, 2009 [Doc. 121].  At the August 5, 2009 oral argument on the motion, this

Court found all but one of Mr. Wilkinson's opinions appeared to be repetitive when examining the

possible cadre of expert witnesses, however, the Court did not, on its face alone, preclude Mr.

Wilkinson from testifying at trial on any of his opinions.  Rather, this Court deferred all matters

concerning Mr. Wilkinson's testimony to trial, including Mr. Wilkinson's opinion concerning the

rig's air gap, when this Court can determine if the opinions actually are repetitive to the witnesses

*actually called* at trial.

GSF does not re-urge the motion on the basis of any new evidence, but rather, seeks a ruling

excluding Mr. Wilkinson's opinion that raising the air gap on the rig would have ensured the rig's

survival on two grounds: (1) The instant case will now be tried to a jury; and (2) Mr. Wilkinson's

opinion is not supported by any type of testing or scientific analysis sufficient to render the opinion

reliable.  The latter ground is the same basis upon which GSF sought exclusion of Mr. Wilkinson's

opinions in 2009.

Apache opposes the motion on grounds no new evidence or argument has been presented,

therefore, the Court remains unable to determine the admissibility of the testimony prior to trial.

Apache further argues Mr. Wilkinson has never opined that raising the air gap would have "ensured"

the rig's survival, only that based upon his experience and GSF's own operations manual, an

adjustment of the air gap to 70 feet "likely" would have saved the rig.  Apache argues GSF is free

to cross-examine Mr. Wilkinson about evidence that other rigs not owned by GSF, with air gaps in excess of 50 feet, failed during the storm.

Having already considered this issue and deferred the matter to trial, this Court considers GSF's second request for a ruling on the issue under Rules 104 and 403 of the Federal Rules of Evidence.  After review of the record, this Court concludes the matter likely remains one for cross-examination at trial.  Thus, after consideration of the re-urged motion, this Court concludes its prior ruling should not be changed, and the issue remains DEFERRED to trial and likely a matter for cross-examination - that determination to be made by the Court within the evidentiary context of the trial.

3.   **Defendants' Re-Urged Motion to Exclude Expert Witness Testimony from Plaintiff's Designated Expert, Kenneth M. Smith, Jr. [Doc. 228]**

In this motion, GSF seeks to exclude the anticipated testimony of Apache's expert Kenneth M. Smith, Jr., who GSF argues is, also, expected to testify that if GSF had raised the air gap of the Adriatic VII, the rig would have survived the hurricane.  GSF filed its first motion seeking to limit the testimony of Mr. Smith on July 10, 2009 [Doc. 122]; GSF subsequently supplemented its motion [Doc. 146].  At the August 5, 2009 hearing, this Court granted GSF's motion as to one opinion, but deferred GSF's remaining arguments for cross-examination at trial or until the Court can determine if the testimony is, in fact, repetitive depending upon which witnesses Apache actually calls and to what they actually testify.

GSF does not re-urge the motion on the basis of any new evidence, but rather, seeks a ruling excluding Mr. Smith's opinion that raising the air gap would have ensured the rig's survival on two grounds: (1) The instant case will now be tried to a jury; and (2) Mr. Smith's opinion is not supported by any type of testing or scientific analysis sufficient to render the opinion reliable.  The

6

latter ground is the same basis upon which GSF sought exclusion of Mr. Smith's opinions in 2009. Apache opposes the motion on essentially the same grounds it opposes GSF's motion with respect to Mr. Wilkinson's opinion on the air gap, arguing GSF's disagreements with Mr. Smith's opinions are better addressed via cross-examination at trial.

Having already considered the substantive issue and deferred the matter to trial and noted the matter, if not repetitive, is likely one for cross-examination, this Court considers GSF's second request for a ruling on the issue under Rules 104 and 403 of the Federal Rules of Evidence.  For the same reasons stated in connection with the opinions of Mr. Wilkinson, this Court concludes its prior ruling should not be changed, and the issue remains DEFERRED to trial and notes it is likely one for cross-examination - that determination to be made by the Court within the evidentiary context of the trial.

4.   **Defendants' Re-Urged Motion to Exclude Expert Witness Testimony from Plaintiff's Designated Expert, David L. Kriebel [Doc. 230]**

In this motion, GSF seeks to exclude the anticipated testimony of Apache's expert David L. Kriebel on the following grounds: (1) Kriebel lacks the expertise to opine that GSF should have viewed a 50 foot air gap for the rig as inadequate; (2) Kriebel's opinion that GSF could have anticipated high wave conditions at the location of the rig is based on the use of improper and non-standard methodologies and is, therefore, unreliable; and (3) Kriebel's opinion that wind forecasts should have been used by GSF to determine the rig's air gap was insufficient is not reliable for numerous reasons.

GSF filed its first motion seeking to limit the testimony of Mr. Kriebel on July 10, 2009 [Doc. 120]; GSF subsequently supplemented its motion [Doc. 145].  At the August 5, 2009 hearing, this Court granted GSF's motion as to one opinion, denied the motion as to another opinion, and

7

determined GSF's remaining arguments are better suited for cross examination at trial.  GSF does not re-urge the motion on the basis of any new evidence, but rather, re-urges this Court to exclude the opinions delineated above on grounds this case will now be tried to a jury.  Thus, GSF presents no new argument or evidence justifying a ruling at this time.  Apache opposes the motion on grounds GSF is re-urging portions of its prior motion that were denied, without providing any new evidence or argument justifying a different result.

The Court independently reviewed the transcript of the hearing with respect to the original motion to exclude Mr. Kriebel's testimony.  Interestingly, a major focus of the argument with respect to Mr. Kriebel was that he erroneously used the wrong measurement – feet (rather than meters) – in performing many of his calculations.  GSF's motion was granted to the extent Mr. Kriebel used incorrect measurements for his calculations.[3]

The record, also, shows this Court exhaustively addressed the latter two arguments presented by GSF in its re-urged motion at the August 2009 hearing, specifically, Mr. Kriebel's opinions that GSF could have anticipated high wave conditions at the location of the rig, and that wind forecasts should have been used by GSF to determine the rig's air gap.  After hearing argument on these points, the Court determined the matters are better reserved for cross-examination at trial, and this Court now concludes GSF fails to advance any new argument or evidence that would justify a change in that ruling.  Therefore, with respect to those opinions, the noted opinions, to the extent they are not repetitive, remain matters for cross-examination.

However, with respect to the first ground raised by GSF in the instant re-urged motion – that

---

[3] Although not addressed in the present motion, it is assumed Mr. Kriebel's most recent report issued in conjunction with the trial being continued, corrected the errors in calculation, as GSF no longer seeks to exclude Mr. Kriebel's calculations on that ground.

is, challenging Mr. Kriebel's expertise to opine that a 50 foot air gap was insufficient – GSF did not raise the issue of expertise in its first motion. Here, GSF argues Mr. Kriebel should be precluded "from offering any expert opinions as to how drilling rigs should operate since he is an oceanographic and meteorological expert and does not possess sufficient knowledge, skill, experience, training or education on drilling operations." Therefore, GSF now, also, seeks to exclude Mr. Kriebel's opinion that the air gap of 50 feet was insufficient on grounds his opinion "is plainly beyond Kriebel's field of expertise" under Fed. R. Evid. Rule 702, and that permitting Mr. Kriebel to testify to the jury on this point would be without probative value and unduly prejudicial under Fed. R. Evid. Rule 403.

Although not raised as an issue in GSF's prior motion, the Court addressed the expertise of Mr. Kriebel as to the arguments made at that time, at the August 2009 hearing, as follows:

> Next is GSF's motion to exclude David Kriebel, document number 120. As I understand it, Mr. Kriebel's area of expertise is wave dynamics and forecasting or indications of wave interpretation and of wind/wave forecasting. He is a professor of coastal and oceanographic type engineering at the U.S. Naval Academy. *So his qualifications are not at issue.*
>
> As I understand it as to each of the motions that remain, the experts' qualifications are not at issue, nor were they with Mr. Templeton, which is of interest. When we get ready for the pretrial, I'm going to need you to be able to agree whether you're going to stipulate or not to their qualifications. That doesn't mean you can't traverse a little bit to bring up weaknesses if you want, but I need to know whether we're going to have a full-blown fight about it. I assume not based on these motions.

In the instant motion, GSF now challenges Mr. Kriebel's qualifications as to certain aspects of his opinion. GSF, however, within its motion, has not presented this Court with specific information to convince the Court that Mr. Kriebel cannot render an opinion regarding the wave and wind forecasting and sufficiency *of the air gap* as to general engineering principles. Indeed, at the August 2009 hearing this Court specifically noted, without comment or objection, that Mr. Kriebel,

on his face, seemed to be qualified to render certain opinions within his area of expertise, although, again, it must be noted the issue of qualification was not at issue nor contested at that time. Because GSF's arguments concerning Mr. Kriebel's qualifications are bare-bones in the instant motion, GSF's motion on this point is DENIED at this time. However, this Court will further address the issue of Mr. Kriebel's qualifications as they relate to his actual opinions, at the pre-trial conference, and the parties are ORDERED to present brief arguments on this point – not to exceed one page – as part of their pre-trial order if the question of qualification of Mr. Kriebel as to *the actual opinion* he is to render is truly at issue.

### 5.    Motion in Limine [Doc. 229]

In this motion, GSF seeks to limit the following testimony:

### 1.    Any reference to the Defendants as "Transocean"

GSF seeks an order of this Court ruling defendants may not be referred to as "Transocean" at trial, but only as "GlobalSantaFe," arguing that referring to defendants at any point as "Transocean" will create unfair prejudice and confusion and will mislead the jury in light of the well-publicized Macondo spill in the Gulf of Mexico, better know within the press as "the BP Oil Spill" or "Deepwater Horizon oil leak/spill." GSF also argues to refer to it as "Transocean" is irrelevant, as Transocean was not sued in this case and only became the successor-in-interest to GSF more than two years after Hurricane Rita.

Apache responds that while it agrees it will not refer to the "Deepwater Horizon" fire and explosion, it is not practical, nor is it necessary, to avoid any reference to "Transocean." Apache also argues because GSF and Transocean merged into Transocean, during jury selection it will be necessary to ascertain whether potential jurors have any connection to either company. Apache also

argues there will also be witnesses, including GSF experts, who were employed by GSF at the time of Hurricane Rita, but now who are employed by Transocean, and Apache argues it "has a right" to explore these relationships.

This Court is not certain of the exact nature of the "right" referenced by Apache, however, agrees it would be unnecessary and irrelevant to refer to the "Deepwater Horizon" fire and explosion in connection with GSF at trial or GSF in any of its popularly known identities which are clearly associated with that environmental disaster, and Apache is instructed it will not be permitted to do so without leave of Court first having been obtained.  However, there likely will be relationships between potential jurors and "Transocean" which will need to be explored during jury selection and this inquiry is likely inescapable.  Whether, beyond this narrow confine, there might be reason to note the present corporate incarnation of GSF, is a determination this Court cannot make in a vacuum, however, the Court can envision factual circumstances where such reference might be allowed.

The parties shall come to the pre-trial conference prepared to discuss this matter further. Nevertheless, at this time, GSF's motion is GRANTED IN PART and DENIED IN PART, as follows: When the testimony sought to be elicited clearly relates to actions taken by GSF at the time of the subject incident, GSF will be referred to as "GSF, and not "Transocean."  However, to the extent it might be legally necessary or factually relevant to explore the GSF Transocean relationships beyond that point, Apache is instructed to seek permission of the Court outside the presence of the jury. However, GSF is reminded they are now a part of Transocean, by their own corporate decision, and it is not the responsibility of this Court to shield GSF from that legal and corporate reality. Furthermore, within jury selection, GSF should anticipate and expect the Court will inquire whether

any potential juror or family member has a relationship of any kind with GSF or Transocean.

2. **Any documents or evidence reflecting forecasts for Hurricane Rita issued after the Adriatic VII was evacuated if offered by Apache as evidence of GSF's fault or liability**

GSF argues the introduction of any evidence reflecting forecasts for Hurricane Rita *after* the evacuation of the Adriatic VII as evidence of GSF's fault or liability is irrelevant to any issues in this case and would result in unfair prejudice and confusion of issues, and would mislead the jury. In response, Apache agrees the reasonableness of GSF's evacuation should be based on *all* information that was available to GSF *at the time of the evacuation*, including forecasts issued before the evacuation. However, Apache, *also*, argues forecasts and hindcasts issued *subsequent* to the hurricane are relevant and admissible "for a number of reasons and relate to the liability of GSF (to establish wave-in-deck loading, etc.)," perhaps an ambiguous, vague, and rather conclusory statement, at best.

However, in its reply brief GSF agrees both forecasts and hindcasts are relevant to the factual issues of determining the *strength of the storm* and its *return period*, as these are relevant to GSF's Act of God defense, but argues no post-evacuation forecasts or hindcasts should be introduced by Apache, *for the purpose of showing what GSF knew or should have known before those forecasts and hindcasts were issued.* Given GSF's position, this Court suggests GSF's argument, perhaps, might have better been one requesting a limiting jury instruction as they themselves desire to present hindcasts within the context of their defense.

After consideration of all arguments, this Court, again, notes it cannot conclude forecasts or hindcasts issued after Hurricane Rita will have no relevance *whatsoever* to any issues at play at trial. Indeed, if forecasts or hindcasts issued after the evacuation, but before the storm actually hit the

actual location of the rig, could have influenced GSF's conduct before the storm hit the actual location of the rig, this Court could foresee an argument the forecasts or hindcasts might be relevant to the issue of GSF's liability.  Although only one example, this Court cannot, at this juncture, make such a broad blanket ruling.  Furthermore, GSF, itself, admits those hindcasts are relevant to its Act of God defense, consequently, the broad ruling requested would be inappropriate.  As the issue of whether GSF could have or should have done something differently in light of the information available to GSF before the storm hit the actual rig location seems to be disputed by the parties, this matter is likely better left to trial and determination by the trier of fact.  However, again, this court cannot make such a determination in a factual vacuum.  The same analysis would play, it would seem, as to a limiting instruction as to the purpose for which such evidence can be used; such a determination cannot be made in a factual vacuum.  Consequently, this Court cannot make the argued for determination until the facts are or have been presented at trial.

Considering the foregoing, this matter remains DEFERRED to trial, however, it is ORDERED Apache will be required to lay a proper foundation as to the relevance of any forecasts or hindcasts it seeks to introduce, before putting that evidence before the jury.

3.  **Any documents or evidence regarding changes to guidelines for air gaps on jack-up rigs issued subsequent to Hurricane Rita, whether issued by Minerals Management Service ("MMS"), American Petroleum Institute ("API") or any other entity**

GSF argues after 2005, various organizations adopted new guidelines for maintaining air gaps on jack-up rigs in the Gulf of Mexico.  GSF argues any such guidelines regarding minimum air gaps were non-existent and without force and effect at the time of Hurricane Rita, and any reference to post-Hurricane Rita Air gaps are not probative and are irrelevant to any issues in this case, including whether GSF should have considered or abided by those guidelines.  GSF argues not only

13

that the introduction of such evidence would mislead the jury and create prejudice, the foregoing are subsequent remedial measures and, therefore, are inadmissible under Rule 407 of the Federal Rules of Evidence.

Apache responds that although jack-up vessel owners were using a minimum air gap of 50 feet prior to and during the 2005 hurricane season, several "GSF experts" participated in pre-2005 conferences in which the need for larger air gaps was discussed.  Ergo, Apache argues GSF cannot *avoid liability* merely because it followed a "minimum" air gap guideline it knew or should have known was obsolete.   It is not clear whether GSF is arguing that merely because it followed existing regulations it should be or must be found free of fault - an argument which it would seem would be contrary to law - or if Apache is arguing they should be able to use the new regulations to impeach the "GSF Experts" - a use allowed by Federal Rule of Evidence 407, nonetheless, to the extent the alleged subsequent remedial measures are sought to be introduced, this Court looks to the Federal Rules of Evidence for guidance.  Rule 407 of the Federal Rules of Evidence states:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407.

Pursuant to the rule, if Apache seeks to introduce evidence of changes in air gap guidelines subsequent to Hurricane Rita, such evidence will not be admissible to prove GSF's negligence or

14

culpable conduct.  However, this Court cannot, in a factual vacuum, rule such evidence might not be admissible for another purpose, such as showing the feasibility of precautionary measures, or impeachment of GSF witnesses as contemplated by Fed. R. Evid. 407.

As the Court does not know for what purpose Apache might intend to introduce the foregoing evidence, nor what evidence will have been presented subject to possible impeachment, this Court cannot rule on this matter prior to trial, and the matter remains DEFERRED to trial.  However, again, Apache is instructed to give notice outside the presence of the jury of its intention to introduce evidence of subsequent remedial measures so that objections can be made outside the presence of the jury and ruled on by the Court.

4.     **Any documents or evidence purportedly showing that GSF or any other entity raised the air gap on the High Island IV to 70 feet before its evacuation due to Hurricane Rita**

This request involves a factual dispute between the parties regarding whether a report prepared by an adjuster retained by GSF's underwriters contains an error.  Apache argues the report in question states the air gap on the High Island IV rig was raised to 70 feet prior to Hurricane Rita, while GSF argues the report contains an obvious error.  As the issue of the report and its possible factual significance involves a dispute of fact, it is likely a matter for the trier of fact to consider at trial.  Thus, GSF's request is DENIED and the factual dispute is one for trial and likely determination by the trier of fact, unless all agree the report is, in fact, an error and has no other factual significance.

5.     **That Apache be required to first lay a foundation establishing that GSF received forecasts showing waves at the Adriatic VII's location would exceed the rig's 50 foot air gap prior to the rig evacuation before asking any questions about whether GSF should have instructed the rig to raise its air gap because GSF knew there was going to be a wave higher than 50 feet at the rig's location.**

15

The Court believes this request goes to the heart of the entire case – the reasonableness, or lack thereof, of GSF's actions prior to and during the evacuation of the Adriatic VII during Hurricane Rita.  Because of the nature of the loss at issue – an allision and damage to a platform as a result of a rig breaking loose during a hurricane in the Gulf of Mexico – this Court cannot determine what evidence might or might not be relevant to the issue of reasonableness under those circumstances.  One need only look to the history of hurricanes within the Gulf of Mexico and the attempts to predict their progress, strength, impact, and path to recognize the issue of reasonableness of ones conduct under hurricane conditions might not be as obvious as either party might argue.  Consequently, this Court cannot and will not, in a vacuum, attempt to establish what evidence might or might not become relevant under the circumstances established by the evidence at trial.  However, as with all evidence sought to be introduced by Apache, and as Apache acknowledges, Apache first must lay the proper foundation showing the relevance of any evidence objected to by GSF.  Considering the foregoing, this matter remains DEFERRED to trial and likely will be one left to the determination of the trier of fact.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___8___ day of August , 2012.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE